245 N.J. Super. 138 (1990)
584 A.2d 817
ROBERT L. COURTNEY, D.O., PLAINTIFF-RESPONDENT CROSS-APPELLANT,
v.
SHORE MEMORIAL HOSPITAL AND MEDICAL STAFF OF SHORE MEMORIAL HOSPITAL, DEFENDANTS-APPELLANTS CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 10, 1990.
Decided December 21, 1990.
Before Judges BILDER, MUIR, Jr. and BROCHIN.
Jack Feinberg argued the cause for appellants-cross-respondents (Mairone, Biel, Zlotnick, Feinberg & Griffith, attorneys; Jack Feinberg, Gary R. Griffith and Edwin A. Paone, on the brief).
*139 Mitchell S. Berman argued the cause for respondent-cross-appellant (Eisenstat, Gabage & Berman, attorneys; Mitchell S. Berman, on the brief).
Norris, McLaughlin & Marcus submitted a brief on behalf of amicus curiae New Jersey Hospital Association (Richard J. Webb and Brian M. Foley, on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
This appeal arises from a hospital disciplinary proceeding in which plaintiff, a physician specializing in obstetrics and gynecology, was sanctioned for disruptive behavior and failure to have medical malpractice insurance. For the former conduct, he was placed on supervised probation for one year; for the latter failure, his medical staff privileges were suspended for 21 days. He sought judicial review by way of an injunctive action. Defendants, Shore Memorial Hospital and its medical staff, appeal from so much of the resulting Chancery Division order as enjoined the imposition of the three week suspension. Plaintiff Robert L. Courtney, the doctor, cross-appeals from that part of the order which upheld the probation.
The action instituted in the Chancery Division essentially sought a review of the final decision of the Board of Trustees of the Shore Memorial Hospital. The attack was directed solely at the result as being arbitrary, capricious and unreasonable. The procedure employed by the hospital was not questioned.
The Chancery Division review is very much analogous to appellate review of the final action of an administrative body except that there is a more relaxed standard  the test is whether the decision is supported by sufficient reliable evidence to justify the result. See Nanavati v. Burdette Tomlin Memorial Hosp., 107 N.J. 240, 249, 526 A.2d 697 (1987); Garrow v. Elizabeth General Hospital and Dispensary, 79 N.J. 549, 565, 401 A.2d 533 (1979). When the decision relates to subjective matters such as disruptive conduct, a termination of hospital *140 privileges requires a finding that prospective disharmony will probably have an adverse impact on patient care. See Nanavati v. Burdette Tomlin Memorial Hosp., supra, 107 N.J. at 254, 526 A.2d 697. Such a test is, of course, not relevant to more objective grounds such as failure to comply with statutory qualifications or to adhere to rules and regulations required by law or reasonably adopted for the proper governance of the hospital and the carrying out of its functions. In all events, the courts are enjoined to recognize the expertise of the Board and the extensive external regulation to which it is subjected. Id. at 251, 526 A.2d 697. "In so specialized and sensitive an activity as governing a hospital, courts are well advised to defer to those with the duty to govern." Ibid.
The standard of our appellate review is essentially the same. Our function is to review the record to see whether the trial court has properly fulfilled its function and to see whether the record made before the hospital committee supports the Board's findings.
As noted, the Board dealt with two discretely different matters: a contention that Dr. Courtney engaged in disruptive behavior as evidenced by 22 separate incidents, each of which resulted in a specific charge, and a contention that he had allowed his medical liability coverage to lapse in violation of the Medical Staff By-laws and had failed to provide proof of insurance when requested. Neither Dr. Courtney's competence nor the quality of care provided his patients was challenged.
Following administrative hearings with respect to the incidents of disruptive behavior, the propriety of which is unchallenged, the Board found that "four of them specifically, and all of them in the aggregate, show[ed] a pattern of disregard for authority, rules and procedures applicable to all members of the Medical Staff." The details of these incidents are set forth in the Report and Recommendations of the Ad Hoc Appeals/Hearing Committee and need not be repeated. Suffice it to say that we are satisfied that the Board's findings were supported by *141 sufficient reliable evidence and that the hospital established that prospective disharmony will probably have an adverse impact on patient care, essentially for the reasons given by the trial judge in his oral opinion of October 19, 1989. Moreover, we note that the probationary period has already been served, rendering this aspect of the appeal moot.
With respect to the failure to maintain medical malpractice insurance, we are similarly satisfied that the Board's findings that Dr. Courtney allowed his coverage to lapse during the period from July 1, 1987 to January 13, 1988 and that he purposefully avoided requests for proofs and information as to insurance during that period are supported by sufficient credible evidence. The fact that he later obtained retroactive coverage begs the question. The fact is that insurance-wise he practiced naked during that period. The conclusion of the Board that the subsequent arrangements for retroactive coverage did not excuse or cure the clear violation of the Medical Staff By-laws was a reasonable determination entitled to our deference. See Nanavati v. Burdette Tomlin Memorial Hosp., supra, at 250-251, 526 A.2d 697. Although the trial judge did not specifically sustain these findings and conclusions, it was clearly implicit in his comments about Dr. Courtney's conduct with respect to the insurance as well as his stated view as to Dr. Courtney's lack of credibility in regard to this matter.
The trial judge failed to make explicit findings with regard to the existence of sufficient evidence to support the finding that Dr. Courtney was without insurance coverage because he, the judge, believed, under Nanavati, that no sanction could be imposed without an additional finding that the lack of coverage during that period would create, at the later period when coverage did exist, prospective disharmony which would probably have an adverse impact on patient care. He felt this was not and could not be found and enjoined the three week suspension. This was error. He misread Nanavati.
*142 Nanavati deals with disharmony  personality difficulties which are largely subjective and in a reasonably large institution inevitable. Id. at 253, 526 A.2d 697. It is only when conduct reaches the level of interfering with patient care that it can be penalized. Id. at 253-255, 526 A.2d 697. Thus, the standard requires the hospital to establish that "prospective disharmony will probably have an adverse impact on patient care." Id. at 254, 526 A.2d 697. "Prospective" because the sanction is intended to protect patient care, not punish a doctor for past personality failures.
An objective violation of a specific rule or regulation is quite different. Hospitals cannot function without rules governing the conduct of the health care providers. Many of the rules are required by law. Others may be dictated by hospital review organizations or generally recognized standards for proper medical care. Whatever their source, if they are reasonable, they are entitled to judicial recognition. Id. at 249-250, 526 A.2d 697. A necessary corollary of this is a recognition of the right of the institution to enforce its rules.
Here we have a by-law requiring that members of the medical staff carry medical malpractice insurance. The reasonableness of this requirement to protect the patient as well as the institution needs no discussion. The hospital, following procedures which clearly provided Dr. Courtney with all the due process to which he was entitled, found that he had practiced without insurance coverage for over six months and had hidden that fact from the administration. The imposition of an appropriate penalty both as a punishment for this misconduct and as a deterrent to similar misconduct in the future, by Dr. Courtney or others, cannot be found to be arbitrary, capricious or unreasonable. Indeed, a denial of this right might well threaten the very quality of patient care. We are satisfied that the sanction imposed, a three week suspension, is reasonable and well within the decision-making power to which we have been enjoined to give deference.
*143 The decision below as to the suspension of medical staff privileges is reversed. The stay of the suspension of Dr. Courtney's privileges is vacated.